UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,

                                  **MEMORANDUM & ORDER**

        - against -                 19-CR-102 (RJD) (SMG)

JOSE CARLOS GRUBISICH,

                Defendant.
-------------------------------------------------------- x

DEARIE, District Judge

     In a three-count indictment, Defendant Jose Carlos Grubisich ("Defendant") is charged with conspiracy to violate the bribery (Count I) and books and records (Count II) provisions of the Foreign Corrupt Practices Act ("FCPA"); and conspiracy to commit money laundering (Count III). The Government alleges that in Grubisich's role as CEO of a Brazilian petrochemical company, he agreed to make and subsequently conceal bribery payments to foreign officials in order to secure contracts with a Brazilian state-owned oil company. Sealed Indictment ("Ind."), ECF No. 1, ¶¶ 41-48. Specifically, the Indictment details a scheme involving bribes to public officials to secure contracts for the construction of a polypropylene (plastics) plant and the purchase of naptha, a raw chemical used in petrochemical operations. Id. ¶¶ 27-33. Defendant moves to dismiss, arguing (i) Count I duplicitously charges two distinct bribery conspiracies, requiring dismissal in its entirety or severance and dismissal of one bribery charge as time-barred; (ii) Defendant withdrew from the books and records conspiracy as a matter of law when he left his position as CEO; (iii) charges of conspiracy to commit money laundering relating to the polypropylene plant bribery are time-barred; (iv) the Indictment fails to plead knowledge as to the transportation element of the money laundering statute; (v) Count III impermissibly applies the money laundering statute extraterritorially; and (vi) Count III is

defective under the Due Process Clause of the Fifth Amendment. See Def. Br., ECF No. 63.
Defendant also asks the Court to compel the Government to produce a Bill of Particulars. For the
reasons described below, the Court denies Defendant's motions to dismiss and reserves decision
on the motion to compel production of a Bill of Particulars, pending further discussions with
counsel.

## BACKGROUND

The Court accepts the following allegations, which appear in the Indictment, as true for
the purpose of these motions. See United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985).
Defendant is a Brazilian citizen who served as the CEO of Braskem, S.A. ("Braskem"), a Brazil-
based petrochemical company, from 2002 to 2008. Ind. ¶ 1. Subsequently, Defendant served on
Braskem's Board of Directors and in various capacities for Odebrecht, a Brazilian holding
company with a controlling stake in Braskem. Id. From 2002 to 2014, Defendant and other
Braskem and Odebrecht employees and agents diverted approximately $250 million of
Braskem's funds to pay bribes to Brazilian government officials and political parties so that
Braskem could obtain and retain certain business. Id. ¶¶ 17, 19.

Specifically, in 2006, Defendant conspired with a senior executive at Odebrecht ("Co-
Conspirator 1") and others to set up a slush fund designed to fraudulently transfer money from
Braskem, through several shell companies known as the "Caixa 2 Entities," to an Odebrecht
division called the Division of Structured Operations ("DSO"). Id. ¶¶ 6, 24. The DSO would then
funnel the money to the bribery recipients. Id. ¶ 20. To facilitate these transfers, Defendant and
his co-conspirators used, among others, bank accounts in Brazil, New York, and Florida. Id.
¶ 25.

In 2005, Braskem entered a series of contracts with Petrobras, a Brazilian state-owned and state-controlled oil company, to complete the construction of a polypropylene plant in Brazil. Id. ¶¶ 5, 27. In an effort to prevent Petrobras from reassigning these contracts to one of Braskem's competitors, Defendant directed a Braskem executive ("Co-Conspirator 2") to negotiate a bribe of up to $4.3 million to an executive and director of Petrobras ("Foreign Official 1"). Id. ¶¶ 7, 14, 28. After Defendant approved the terms of the bribe proposal, the DSO made the agreed-upon bribe payments to Foreign Official 1 and an official in the Brazilian legislative branch ("Foreign Official 2"). Id. ¶¶ 15, 28, 29.

In 2008, prior to leaving his position as CEO of Braskem, Defendant initiated negotiations with Foreign Official 1 and others to obtain favorable pricing on a long-term contract with Petrobras for naptha, a raw material used in petrochemical operations. Id. ¶¶ 30-31. Defendant again directed Co-Conspirator 2 to negotiate a bribe on behalf of Braskem, this time with Foreign Official 2, and facilitated the involvement of an intermediary who ultimately served as a conduit for Braskem's bribe payments to Foreign Official 1. Id. ¶ 31. As CEO, Defendant certified to the Securities and Exchange Commission that Braskem was in compliance with the law and that its disclosures were accurate. Id. ¶¶ 35-38.

From 2009 to 2011, when Defendant was no longer CEO of Braskem, Foreign Official 1, Foreign Official 2, and others helped Braskem receive favorable pricing on the naptha contract, receiving $12 million in bribe payments from Braskem that were made either through the DSO or the intermediary. Id. ¶ 32. Two of such payments were routed through correspondent bank accounts located in New York City. Id.

**DISCUSSION**

A defendant seeking dismissal of an indictment faces a high bar. United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) ("The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." (quoting United States v. Nai Fook Li, 206 F.3d 56, 61 (1st Cir. 2000))). An indictment satisfies Federal Rule of Criminal Procedure 7(c)(1) if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Stringer, 730 F.3d 120, 123-24 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974) (internal quotation marks omitted)). To meet this standard, the indictment generally need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Id. (quoting United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000) (internal quotation marks omitted)).

1. Motion to Dismiss, or Sever, Count I as Duplicitous

Count I charges Defendant with conspiracy to violate the anti-bribery provisions of the FCPA, 18 U.S.C. §§ 371, 3551 et seq. It alleges several overt acts in furtherance of the conspiracy that date from 2006 through 2014. Ind. ¶ 43. Defendant seeks to dismiss or, alternatively, sever Count I on the grounds that it is impermissibly duplicitous. Def. Br. at 5-11.

"[A]n indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be a separate count for each offense, and 2) the defendant is prejudiced thereby." United States v. Vilar, 729 F.3d 62, 79 (2d Cir. 2013) (quoting United States v. Sturdivant, 244 F.3d 71, 75 (2d Cir. 2001) (internal quotation marks omitted)). A conspiracy indictment "presents 'unique

4

issues' in a duplicity analysis because 'a single agreement may encompass multiple illegal objects.'" United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (quoting United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)). Separate conduct may be aggregated into a single conspiracy count "if those acts could be characterized as part of a single continuing scheme." United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989) (citing United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981)); see United States v. Berger, 224 F.3d 107, 114-15 (2d Cir. 2000) ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation." (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 963 (2d Cir. 1990) (internal quotation marks omitted))).

Count I is not impermissibly duplicitous. The conspiracy charged in Count I is fairly characterized as a continuing scheme to bribe foreign officials in order to obtain and retain business for Braskem and Odebrecht. Ind. ¶¶ 41-43; see Aracri, 968 F.2d at 1519 (concluding that an indictment properly charged one conspiracy where it "clearly could be characterized as one continuing scheme that involved utilizing different companies, including 'burn' companies, in a series of transfers all for the single purpose of concealing the non-payment of taxes and transferring the liability for paying taxes to 'burn' companies and others."); Margiotta, 646 F.2d at 733 (rejecting duplicity challenge where indictment charged single scheme to defraud that involved numerous mailings); Tutino, 883 F.2d at 1141 (permitting aggregation of two heroin sales in one count as the sales were part of an ongoing drug conspiracy). The two alleged bribes have much in common. They were made at Defendant's direction, negotiated by the same Braskem director (Co-Conspirator 2), effected by the same method of transfers through the Caixa 2 Entities and the DSO that were characterized as commission payments, and resulted in

payment to the same two officials in order to influence contract negotiations with one entity, Petrobras. Ind. ¶¶ 26-29, 31-32. The proffered evidence illustrates a single corrupt scheme. Accordingly, the motion to dismiss or sever Count I is denied.

2.  Motion to Dismiss Count II as Time-Barred

Count II charges Defendant with conspiracy to violate the books and records provisions of the FCPA, 18 U.S.C. §§ 371, 3551 et seq. It alleges several overt acts in furtherance of the conspiracy that date from 2006 through 2014. Ind. ¶ 46. Defendant seeks to dismiss Count II on the basis that he withdrew from the alleged books and records conspiracy as a matter of law when his tenure ended as Braskem's CEO in 2008, which is prior to the five-year statute of limitations period, 18 U.S.C. § 3282, thereby rendering Count II time-barred. Def. Br. at 11-15.

The assertions raised in Defendant's motion, see, e.g., Def. Br. at 13-14 (arguing that Defendant withdrew since his exit was well known to his alleged co-conspirators and "foreclosed his ability to supervised Braskem's accounts"), present issues of fact to be determined by a jury. See, e.g., United States v. Carnesi, 461 F. Supp. 2d 97, 99 (E.D.N.Y. 2006) (holding that a pretrial request for dismissal of conspiracy charges on the issue of withdrawal was premature as it is a question of fact for the jury); United States v. Burke, No. 09-cr-135 (SJ), 2011 WL 2609837, at *5 (E.D.N.Y. July 1, 2011) (finding that whether a defendant's incarceration "constitutes a withdrawal from the alleged conspiracy is 'a fact-dependent question' that is not appropriate for a pretrial motion"), aff'd, 552 F. App'x 60 (2d Cir. 2014). It is premature to conclude that Defendant withdrew from the alleged conspiracy upon the end of his tenure as Braskem's CEO. The motion to dismiss Count II is denied.

3.  Motion to Dismiss Count III

Count III charges Defendant with conspiracy to commit money laundering, 18 U.S.C.

§§ 1956(h), 3551 et seq. Defendant moves to dismiss Count III on several grounds: duplicity and

withdrawal as to the two alleged bribes, failure to plead knowledge as to the transportation

element, impermissible extraterritorial application, and violation of due process. Def. Br.

at 15-22. For the same reasons the Court rejects Defendant's arguments for dismissing Count I

on duplicity grounds and Count II on withdrawal grounds, so too the Court rejects Defendant's

duplicity and withdrawal arguments regarding Count III and addresses the remaining three

arguments in turn.

The international transportation provision of the money laundering statute reads:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a
> monetary instrument or funds from a place in the United States to or through a place
> outside the United States or to a place in the United States from or through a place
> outside the United States with the intent to promote the carrying on of specified unlawful
> activity, shall be [punished].

18 U.S.C. § 1956(a)(2)(A). Count III of the Indictment states, after incorporating all facts alleged

thus far in the instrument:

> In or about and between 2002 and December 2014, both dates being approximate and
> inclusive, within the Eastern District of New York and elsewhere, the defendant JOSE
> CARLOS GRUBISICH, together with others, did knowingly and intentionally conspire
> to transport, transmit, and transfer monetary instruments and funds from a place in the
> United States to and through a place outside the United States and to a place in the United
> States from and through a place outside the United States with the intent to promote the
> carrying on of one or more specified unlawful activities, to wit: felony violations of the
> FCPA[.]

Ind. ¶ 48.

a.  Pleading Knowledge

Defendant argues that the Indictment fails to fulfill the supposed requirement that it plead

facts establishing Defendant's knowledge that the relevant funds would be moving to or from the

7

United States. To sufficiently charge a crime, an indictment need "do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Stringer, 730 F.3d at 124 (quoting Pirro, 212 F.3d at 92 (internal quotation marks omitted)). As relevant here, "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (quoting United States v. Wydermyer, 51 F.3d 319, 325 (2d Cir. 1995) (internal quotation marks omitted)). Therefore, even if the Government were required to ultimately prove Defendant's knowledge that the funds entered the United States, an obligation which appears to be unsupported by controlling precedent, it need not specifically allege such knowledge in the Indictment.

The Indictment fulfills the relevant requirements. In addition to tracking the language of the statute and setting forth the approximate time and place of the alleged conspiracy, it alleges Defendant's involvement in the agreement to set up a mechanism through which the bribery payments could be "layered through multiple levels of offshore entities and bank accounts throughout the world" in order to "conceal the origins of the funds" and "distance them from the final beneficiaries." Ind. ¶ 18; see also id. ¶ 24 ("Grubisich and Co-Conspirator 1 instructed Co-Conspirator 4, then an executive in Braskem's finance department, to create a system for Braskem to generate funds for Caixa 2."). As such, the motion to dismiss Count III for failure to plead knowledge is denied.

b. Impermissible Extraterritorial Application

Defendant also asks the Court to dismiss Count III as an improper extraterritorial application of the money laundering statute. Determination of whether a statute is permissibly

8

applied extraterritorially involves a two-step analysis. See RJR Nabisco, Inc. v. European Cmty.,

136 S. Ct. 2090, 2101 (2016). First, the Court asks whether the statute's language clearly

prescribes extraterritorial effect. See id. ("At the first step, we ask . . . whether the statute gives a

clear, affirmative indication that it applies extraterritorially."). If it does, the inquiry ends there.

See id. (noting that it is necessary to consider a statute's "focus" only where the statute does not

on its face apply extraterritorially); United States v. Hawit, No. 15-CR-252 (PKC), 2017 WL

663542, at *3 (E.D.N.Y. Feb. 17, 2017) ("Where there is a clear indication at step one that the

statute applies extraterritorially, the court should not proceed to step two or consider the statute's

focus." (citing RJR Nabisco, 136 S. Ct. at 2101)).

Where, as here, step one is satisfied, the Court then determines the proper scope of

extraterritorial reach based on "the limits Congress has (or has not) imposed on the statute's

foreign application[.]" RJR Nabisco, 136 S. Ct. at 2101. As Defendant acknowledges, Def. Br.

at 20-21, the federal money laundering statute contains a provision specifying its extraterritorial

application. 18 U.S.C. § 1956(f). It reads, in relevant part:

> There is extraterritorial jurisdiction over the conduct prohibited by this section if the
> conduct is by a United States citizen or, in the case of a non-United States citizen, the
> conduct occurs in part in the United States; and the transaction or series of related
> transactions involves funds or monetary instruments of a value exceeding $10,000."

Id. As such, Congress expressly intended that the money laundering statute apply

extraterritorially to a non-United States citizen where "the conduct [prohibited by section 1956]

occurs in part in the United States." See id.

The Indictment alleges conduct within the extraterritorial limits set by § 1956(f).

Contrary to Defendant's rather creative argument, the "conduct prohibited" by the money

laundering statute is not limited to a conspiratorial agreement. Overt acts in furtherance of the

conspiracy, including monetary transfers to or from the United States made with the intent to

promote specified unlawful activity, are "conduct prohibited" by the money laundering statute to which extraterritorial jurisdiction applies under section 1956(f). See Hawit, 2017 WL 663542, at *8 ("allegations that the subject monetary transfers originated or terminated in the United States . . . also satisfy subsection (f)'s requirement of 'conduct that occurred in part in the United States'" (quoting 18 U.S.C. § 1956(f) (citing United States v. Garcia, 533 F. App'x 967, 982 (11th Cir. 2013) (finding extraterritorial jurisdiction was properly met where "evidence showed that the transferred funds originated in the United States" and "[t]hus, a portion of each transaction occurred in the United States")))). This is not changed by the fact that Defendant never physically entered the United States in furtherance of the conspiracy. See United States v. Sadighi, Nos. 98-50442, 98-50468, 1999 WL 980661, at *3 (9th Cir. 1999) (concluding that overt acts taking place in the United States performed in furtherance of money laundering conspiracy, including wire transfers to New York banks, conferred extraterritorial jurisdiction even if some conspirators never entered the United States). Therefore, the motion to dismiss Count III on the grounds of improper extraterritorial application is denied.

    c.   Due Process

    Lastly, Defendant argues that the application of the money laundering statute to him does not comport with due process since there is an insufficient nexus between himself and the United States. Def. Br. at 24. He contends he did not have "fair warning" that his conduct could subject him to criminal liability. Id. at 25. "[T]o apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011) (quoting United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003) (internal quotation marks omitted)). This requirement is satisfied

where, "[a]lthough it may be true that the Defendant did not act with the specific purpose of harming interests of or related to the United States, the evidence supports the conclusion that he was aware that the charged conduct would have such an effect." United States v. Yousef, 2010 WL 3377499, at *4 (S.D.N.Y. Aug. 23, 2010), aff'd, 750 F.3d 254 (2d Cir. 2014) (abrogated on other grounds by Class v. United States, 138 S. Ct. 798 (2018)). "[C]ases in which even the extraterritorial application of a federal criminal statute has been actually deemed a due process violation are exceedingly rare, and a defendant's burden is a heavy one." United States v. Hayes, 99 F. Supp. 3d 409, 422 (S.D.N.Y. 2015) (quoting United States v. Ali, 718 F.3d 929, 944 n.7 (D.C. Cir. 2013) (internal quotation marks omitted)). "This is particularly true where the prosecution is challenged at the pleading stage." Id.

Count III comports with due process. The Indictment alleges facts that, if proven, support the conclusion that Defendant was aware that the charged conduct would harm interests related to the United States. Specifically, it alleges that Defendant and his co-conspirator "caus[ed] Braskem to make payments . . . to bank accounts in the names of the Caixa 2 Entities" which "were made using, among other accounts, Braskem's bank accounts in Brazil as well as a New York-based bank account and a Florida-based bank account held by Braskem Incorporated." Ind. ¶ 25.

Additionally, the Indictment alleges facts generally establishing Defendant's awareness that he was engaging in illegal conduct, regardless of whether such awareness contemplated the violation of United States law, in satisfaction of the "fair warning" requirement of the Due Process Clause. See, e.g., Ind. ¶¶ 24-25; see also Al Kassar, 660 F.3d at 119 ("Fair warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they would reasonably understand that their conduct was criminal

11

and would subject them to prosecution somewhere."). The motion to dismiss Count III for failure to comport with due process is denied.

## CONCLUSION

Defendant's robust attack on the Indictment does raise issues that may warrant critical attention after an evidentiary record has been established, but the arguments presented do not justify favorable action by the Court on the motions to dismiss. The motions to dismiss are denied.

SO ORDERED.

Dated:  Brooklyn, New York
         October 22, 2020

                                        /s/ Raymond J. Dearie
                                        RAYMOND J. DEARIE
                                        United States District Judge